IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | |
|---|---|
| JAY H. PETERSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) <br> ) <br> ) | Civil No. 2:04-CV-962BSJ <br><br> **MEMORANDUM OPINION** <br> **& ORDER RE: RECUSAL** <br> **(28 U.S.C. §§ 144, 455)** <br><br> **FILED** <br> CLERK, U.S. DISTRICT COURT <br> May 1, 2006 (4:33pm) <br> DISTRICT OF UTAH |

* * * * * * * * *

On October 15, 2004, plaintiff Jay H. Peterson commenced this action under 26 U.S.C. § 7422, seeking a "refund of overpaid Federal income taxes," and invoking this court's jurisdiction pursuant to 28 U.S.C. § 1346(a)(1). (Complaint, filed October 15, 2004 (dkt. no. 1), at 2 ¶¶ 3-4.) A little over a year later, the United States and Peterson filed cross-motions for summary judgment under Fed. R. Civ. P. 56. The motions were briefed, and then were argued at a hearing on February 23, 2006. At that hearing, Peterson appeared *pro se*, and Virginia Cronan Lowe appeared on behalf of the United States.

At the conclusion of the February 23rd hearing, the court granted the United States' motion and denied Peterson's motion, and asked counsel for the United States to prepare and submit a proposed form of order reflecting that bench ruling. (*See* Minute Entry, dated February 23, 2006 (dkt. no. 28).) Counsel submitted a proposed order to the court on March 20, 2006.

The next day, Peterson filed a "Motion to Recuse Judge Bruce S. Jenkins" (dkt. no. 29), accompanied by a Certificate of Good Faith and an Affidavit, seeking to disqualify this court

from presiding over the above-captioned proceeding pursuant to 28 U.S.C. §§ 144 and 455.

**JUDICIAL DISQUALIFICATION UNDER 28 U.S.C. § 144 AND 28 U.S.C. § 455**

**28 U.S.C. § 144 and "Personal Bias or Prejudice"**

Section 144 provides for the disqualification of a district court judge when a party to a proceeding before that judge files a "timely and sufficient affidavit" showing that the judge has "a personal bias or prejudice either against him or in favor of any adverse party."[1]  To warrant recusal under § 144 , the alleged bias must be personal and extrajudicial.  *See United States v. Irwin*, 561 F.2d 198, 200 (10th Cir. 1977) ("The bias charged must be of a personal nature and must be such as would likely result in a decision on some basis other than what the judge learned from his participation in the case."); *Davis v. Cities Serv. Oil Co.*, 420 F.2d 1278, 1282 (10th Cir. 1970).

To be entitled to recusal under § 144, the moving party must submit an affidavit showing, among other things, personal bias and prejudice.  *Glass v. Pfeffer*, 849 F.2d 1261, 1267 (10th Cir. 1988).

> It does not follow, however, that a section 144 affidavit will always suffice to effect a transfer of the case to another judge.  Rather, as the First Circuit explained, "courts have responded to the draconian procedure—automatic transfer based solely on one side's affidavit—by insisting on a firm showing in the affidavit that the judge does have a personal bias or prejudice to a party."  The

---

[1] 28 U.S.C. § 144 reads in pertinent part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . . . A party may file only one such affidavit in any case. . . .

28 U.S.C.A. § 144 (1993).

> Seventh Circuit concurs: "[T]he facts averred must be sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient. . . . Because the statute 'is heavily weighed in favor of recusal,' its requirements are to be strictly construed to prevent abuse." Likewise, the Eleventh Circuit has said that the allegations in a section 144 affidavit must be "material and stated with particularity" and be such that "they would convince a reasonable person that a bias exists." Indeed, virtually every circuit has adopted some version of the "convince a reasonable person" test.

Federal Judicial Center, *Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144* 47 (2002) (footnotes omitted).

To be legally sufficient under § 144, the affidavit must aver specific facts: "The affidavit must state with required particularity the identifying facts of time, place, persons, occasion, and circumstances." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).  "The affidavit is insufficient if it merely states conclusions, rumors, beliefs and opinions . . . ." *Glass*, 849 F.2d at 1267.[2]

Adverse rulings alone are insufficient grounds for disqualification of a judge, "as is evidence that the judge criticized or was angry with a party."  *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1501 (10th Cir. 1994).

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make a fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis in original).

---

[2]The court of appeals in *Glass* affirmed the denial of a disqualification motion where the affidavit "lacked particularity" and was "filled with conclusions, rumors and innuendo."  *Glass,* 849 F.2d at 1267-68.

The facts alleged in the § 144 affidavit must be accepted as true, *Glass*, 849 F.2d at 1267, but they are "strictly construed against the affiant and there is a substantial burden on the moving party to demonstrate that the judge is not impartial," not a burden on the judge to prove that he is impartial. *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992). Whether to recuse is a decision "committed to the sound discretion of the district court," and the court of appeals will not reverse a judge's refusal to recuse absent an abuse of that discretion. *Id.*

### 28 U.S.C. § 455 and Judicial Impartiality

Section 455(a) states that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.A. § 455(a) (Supp. 2005). This section "provides considerably broader scope for claims of prejudice and bias. Under this section, factual allegations need not be taken as true, and the test is whether 'a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" *Glass*, 849 F.2d at 1268 (quoting *Hinman*, 831 F.2d at 938). There must be a reasonable factual basis to question the judge's impartiality. *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).

> In applying this objective standard, the initial inquiry is whether a reasonable factual basis exists for questioning the judge's impartiality. *Cooley*, 1 F.3d at 993. We are limited in this regard to outward manifestations and reasonable inferences drawn therefrom. *Id.* "In applying § 455(a), the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." *Id.*

*Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995).

"Section 455 does not require recusal based only on assumptions about a judge's beliefs that are not substantiated by the facts of record. *See Nichols*, 71 F.3d at 351; *Bryce v. Episcopal Church*, 289 F.3d 648, 659-60 (10th Cir. 2002)." *In re McCarthey*, 368 F.3d 1266, 1269-70 (10th Cir. 2004). As the court of appeals has explained:

> The statute "'must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.'" [*Cooley*, 1 F.3d at 993] (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1235 (10th Cir. 1986) (further quotation omitted)). Neither is the statute intended to bestow veto power over judges or to be used as a judge shopping device. *Greenspan*, 26 F.3d at 1006; *Cooley*, 1 F.3d at 993. Further, we are mindful that a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require. *Greenspan*, 26 F.3d at 1005; *In re American Ready Mix, Inc.*, 14 F.3d at 1501; *Hinman*, 831 F.2d at 939.

*Nichols*, 71 F.3d at 351; *see also Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) ("There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is."). *See also* Federal Judicial Center, *Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144*, at 2-15; Annotation, *Construction and Application of 28 U.S.C.A. 455(a) Providing for Disqualification of Justice, Judge, Magistrate, or Referee in Bankruptcy in Any Proceeding in Which His Impartiality Might Reasonably be Questioned*, 40 A.L.R. Fed. 954 (1978 & Supp. 2005).[3]

---

[3]In *United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993), the court of appeals further elaborated upon the legal insufficiency of various grounds often asserted as a basis for judicial disqualification:

> Thus, in addition to other factors, this and other courts have identified various matters arising in cases involving §§ 144, 455(a), or 455(b)(1), which will not ordinarily satisfy the requirements for disqualification under § 455(a): (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters, *United States v. Burger*, 964 F.2d at 1069; *Glass v. Pfeffer*, 849 F.2d at 1267; *Willner v. University of Kansas*, 848 F.2d at 1027; *Hinman v. Rogers*, 831 F.2d at 939-40; *United States v. Hines*, 696 F.2d at 719; (2) the mere fact that a judge has previously expressed an opinion on a point of law, *Leaman v. Ohio Dep't of Mental Retardation*, 825 F.2d 946, 949 n. 1 (6th Cir. 1987); *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976), or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense, *United States v. Gigax*, 605 F.2d at 514; *United States v. Haldeman*, 559 F.2d 31, 134 n. 302 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse, *see Glass v. Pfeffer*, 849 F.2d 1261, 1268 (1988); *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992); *Willner v. University of Kansas*, 848 F.2d at 1028; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented, *see Frates v. Weinshienk*, 882 F.2d at 1506; (5) baseless personal attacks on or suits against the judge by a party, *United States v. Bray*, 546 F.2d at 858; (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the

(continued...)

Section 455(b)(1) provides that a judge "shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" 28 U.S.C.A. § 455(b)(1) (1993).  The standard for determining disqualification under § 455(b)(1) is "'whether a reasonable person would be convinced the judge was biased,'" *Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir. 2000) (quoting *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir.1996) (internal quotation omitted)), and "[r]ecusal under Section 455(b)(1) 'is required only if actual bias or prejudice is proved by compelling evidence.'"  *Id.* at 1025 (quoting *Hook*);[4] *see* Federal Judicial Center, *Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144*, at 6.

**PETERSON'S DISQUALIFICATION MOTION**

According to Peterson's "Affidavit in Support of Motion to Recuse," dated March 21, 2006 (dkt. no. 29) ("Peterson Aff."), his motion is premised upon "the ultimate factual representation" that

> *Judge Bruce S. Jenkins is biased against most or all litigants appearing before him by his excessive suspicions, probably incident to aging, and paranoid delusions that most or all persons in his courtroom are illegal, wrongful, or evil. It is unlikely that he is still functionally cognizant of the legal issues that he purports to decide.*

---

[3](...continued)
judge or others, but which are in fact false or materially inaccurate or misleading;  and (7) threats or other attempts to intimidate the judge. *See United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1985); *United States v. Grismore*, 564 F.2d 929, 934 (10th Cir. 1977), *cert. denied*, 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). . . .

1 F.3d at 993-94 (footnotes omitted).

[4]As *Brokaw* explains, "Because the phrase 'personal bias or prejudice' found in Section 144 mirrors the language of Section 455(b), our analysis under Section 144 is identical.  *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir.1985) ('[W]e shall view judicial interpretations of "personal bias or prejudice" under § 144 as equally applicable to § 455(b)(1).')."  *Id.* at 1025.

(Peterson Aff. at [1] (emphasis in original).)

As the "evidence in the record" supporting his "ultimate factual representation," Peterson proffers a four-page declaration of his own subjective opinions and beliefs, coupled with highly charged characterizations,[5] speculation,[6] and innuendo[7] concerning this court's mental health, competence and cognitive ability—a litany of strident assertions buttressed by very few actual evidentiary facts.  Peterson speaks repeatedly of the court's "delusions," "paranoia" and "delusional beliefs" about "delusional evil," including "delusions of the pernicious evils of debtors in bankruptcy, corporations, lawyers and shareholders," or that "litigants in his courtroom are guilty of extensive evil that only he can perceive by looking inward to his own disturbed imagination."

Parsing Peterson's disdainful discourse on delusions, dementia, anger and acrimony, it becomes apparent that he relies upon three specific alleged "facts": (1) that "[t]he most glaring example of one of Judge Jenkins' delusional beliefs" was the statement that "'I think you had a trustee appointed in your bankruptcy'"; (2) that the court "angrily demanded to know the names of the lawyers who had founded several corporations seventeen years ago in 1989"; and (3) that the court "ordered a final judgment without any witnesses, evidence or trial, or discussion of his

---

[5]As Peterson characterizes the court's colloquy with the parties at the February 23rd hearing, it was a "belligerent," "disturbed, angry" and "long paranoid inquisition," an "intense, angry search for evidence," during which the court "angrily demanded" information, "[s]uddenly and angrily . . . ordered a final judgment," "angrily refuses to discuss any rational basis for his decisions," and "shouted in an enraged voice, 'If you don't like it, then appeal it!'" (Peterson Aff. at [2]-[4].)

[6]Peterson's assertions, *e.g.*, that "Judge Jenkins was so driven by his 'messianic mission' against delusional evil," (*id.* at [3]), and that "[h]is 'complex delusional beliefs' probably go far beyond those documented herein," (*id.* at [4]), are speculative at best.

[7]Peterson's comment, *e.g.*, that "[T]ypically, the delusions that a paranoid displays in public are only a few of those that he harbors," (*id.* at [4]), and his attachment to his Affidavit of a copy of an article entitled "Dementia Symptoms in Aging Parents," may fall into this category.

reasoning," and "angrily refused to provide findings of fact or conclusions of law." (Peterson Aff. at [2], [3], [4].)

### The Bankruptcy Trustee Query

Concerning a Chapter 11 trustee, this court asked:

> THE COURT: Now the bankruptcy estate was your individual bankruptcy estate.
>
> MR. PETERSON: That's correct, yes.
>
> THE COURT: And you were at that point debtor in possession?  Wasn't there a trustee of any kind?
>
> MR. PETERSON: No, there was no trustee.
>
> THE COURT: But you were a so-called debtor in possession?
>
> MR. PETERSON: Yes.

(Transcript of Hearing, dated February 23, 2006 ("Tr. 2/23/06"), at 7:9-17.)  In discussing the consolidated bankruptcy estates of Peterson's corporate entities, the court made a similar inquiry:

> THE COURT:  [The pending bankruptcy estate] was you individually as well as a whole series of corporate structures?
>
> MR. PETERSON:  It was me, yes, it was me individually and, you know, the remnants of these corporations probably were merged or they kind of extinguished.
>
> THE COURT:  Okay.  Now was there ever a trustee in the 11?
>
> MR. PETERSON:  No, there was never a trustee.

(*Id.* at 14:2-10.)

At no point did this court insist that a trustee had been appointed, or make any further reference to a Chapter 11 "trustee."  To the contrary, the court acknowledged more than once that

Peterson served as *debtor-in-possession* of his bankruptcy estate, and continued to address the matter in those terms.  (*See, e.g.*, Tr. 2/23/06, at 19:20-21 (the Court) ("as I understand it you're the, you're the debtor in possession"); *id.* at 19:24-25 (the Court) ("they pay some money to the estate, you, the debtor in possession"); 21:24-25 (the Court) ("In fact as debtor in possession didn't you pay creditors?"); *id.* at 22:13-14 (the Court) ("Ordinarily in a debtor in possession there's a final report and an account is filed."); *see also id.* at 22:22-24; 23:7-11; 31:20-21; 32:11, 23-24; 45:23-24; 51:8; 53:6-7, 12-13, 22; 54:8-10; 57:9, 18-20; 58:23 (references by the court to the debtor-in-possession).)

The court's query early on in the February 23rd hearing simply sought clarification,[8] and insinuated nothing concerning whether Peterson "had done something irresponsible, dishonest or otherwise evil in the management of his bankruptcy case," as Peterson now contends.  (Peterson Aff. at [3].)  Peterson apparently has taken umbrage at the question itself, drawing his own negative inferences for his own reasons.

---

[8] As clarified at the February 23rd hearing, no Chapter 11 trustee was appointed in Peterson's case.  Instead, an existing district-court-appointed Receiver played an integral role in Peterson's second amended Chapter 11 Plan.

As was largely explained in the ensuing colloquy at the hearing, the Federal Trade Commission had filed a complaint against Peterson and several of his corporate entities, alleging significant consumer sales fraud, and had obtained the appointment of a Receiver.  Peterson subsequently filed his Chapter 11 bankruptcy petition, and then entered into a Settlement Agreement with the FTC, the Receiver and the taxing authorities.

Under the terms of the Settlement Agreement and Peterson's second amended Chapter 11 Plan, the receivership—not Peterson's bankruptcy estate—had processed and paid the numerous refund claims made by customers who had purchased products from Peterson's businesses, as well as "non-refund creditors" of those businesses.  At the conclusion of that effort, Peterson enjoyed the benefit of the Receiver's remittance of the residual distribution of unclaimed consumer funds—money that Peterson as debtor-in-possession applied to pay in full all of the allowed claims and administrative expenses of Peterson's bankruptcy estate—leaving a substantial balance that reverted to Peterson personally, together with a $250,000 receivership asset referred to as the "Kaleidoscope Home," that the Receiver transferred to Peterson "tax-free" under the terms of the Settlement Agreement.

Copies of the Settlement Agreement are annexed as Exhibit B to Peterson's Memorandum in Support of Motion for Summary Judgement, filed December 15, 2005 (dkt. no. 19), and as part of Exhibit 1 to the Declaration of Virginia Cronan Lowe, filed November 30, 2005 (dkt. no. 17).  The Settlement Agreement is also annexed as Exhibit A to the Order Authorizing and Approving Settlement Agreement, filed August 29, 1995 (dkt. no. 409), in *Federal Trade Commission v. U.S. Hotline, Inc., et al.*, Civil No. 2:93-CV-444B (D. Utah), and is incorporated in and adopted by that Order.

**The Corporate Formation Query**

As to the formation of Peterson's corporate entities, the court asked:

> THE COURT: Okay. Now who was your attorney that helped you put all these corporate structures together?
>
> MR. PETERSON: Oh, I'm trying to remember. It could have been more than one attorney because they did not, they were not all incorporated in the same year, I think they were all in different years.
>
> THE COURT: Okay.
>
> MR. PETERSON: We just kind of added them as the need arose.
>
> THE COURT: Okay. Were they Utah corporations or were they foreign corporations?
>
> MR. PETERSON: I think they were in Nevada.
>
> THE COURT: Mostly Nevada?
>
> MR. PETERSON: Yes.
>
> THE COURT: Okay. Did you qualify to do business in Utah?
>
> MR. PETERSON: Yes.
>
> THE COURT: Okay. Now were all of these filed, were 11's filed for all of the corporate structures by the Ashton firm?
>
> MR. PETERSON: Yes.

(Tr. 2/23/06, at 48:1-21.)

The question arose in the context of a discussion concerning Peterson's businesses, and the court proceedings that concerned them, and deductions that Peterson reportedly claimed for himself in 2001:

> THE COURT: I'm really just interested generally in whether the corporate structures filed their reports, filed their withholding, did their own withholding?

>        MR. PETERSON: Yeah, yeah, of course, you know, the pre receivership, we were very careful to do everything legally . . . .
>
>        THE COURT: And one of the interesting questions that you raise it seems to me in dealing with your suggestions that withholding was in some fashion in excess of what it ought to be was the chaotic history of identity as to which entity we're talking about, who's entitled to deduct anything at all, who has the obligation to withhold.
>    . . . .
>        Many of the things that you suggest ought to be offset [or] deducted of course aren't yours personally, you know, you're not entitled to deduct ordinarily the expenses that the receivership is authorized to pay out of income, proceeds, liquidation items.
>
>        MR. PETERSON: Yeah, I believe they are, you know, it's viable that you could argue that because the IRS agreed that the corporations are my alter ego.
>
>        THE COURT: Well at least for purposes of the agreement . . . .

(*Id.* at 50:15-20, 51:1-6; 51:24-52:8.)  Nothing in this exchange reflects any "delusional belief that corporations, their lawyers, and their shareholders must have an evil purpose," and the court certainly did not "mutter" any such statement to that effect.

**Bench Rulings and Motions for Summary Judgment**

Concerning the court's rulings made without "witnesses," "evidence," "trial," or "findings of fact and conclusions of law," this matter was before this court on February 23rd for hearing on the parties' cross-motions for summary judgment.  Such motions are properly made where no genuine issue of material fact exists requiring the testimony of witnesses or the presentation of evidence at trial, and where the moving party has demonstrated an entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Summary judgment motions are decided upon the written submissions filed by the parties and the existing record before the court.  (*Id.*)  Because no material factual disputes remain to be decided in the context of summary judgment,

"Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule . . . 56," as Rule 52(a) explains. Fed. R. Civ. P. 52(a).

Peterson asked about findings and conclusions at the conclusion of the February 23rd hearing, (*see* Tr. 2/23/06, at 76:10-12), and the court reiterated its basis for the bench ruling:

> THE COURT: I've indicated that you're bound by your agreement. You can't walk down both sides of the street at the same time and while it's a mess, historically it looks to me like it's a mess, the agreement is pretty definitive.

(*Id.* at 76:13-16; *see id.* at 77:16-21 (same); 77:24-78:1, 14-15 (same).) The court also advised Peterson of his opportunity to file an appeal. (*Id.* at 76:8-9; 78:18-21; 79:3 (the Court).)

The transcript of the February 23rd hearing thus belies the few alleged "facts" proffered by Peterson as supporting his more strident assertions about this court's "departure from competent judicature." (Peterson Aff. at [5].[9])

**CONCLUSION**

Remembering that under § 455(a), "[i]n applying the test, the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question," *Cooley*, 1 F.3d at 993, that initial query must be answered in the negative as to Peterson's motion in this case. Setting aside the motion's more obvious "speculation, beliefs, conclusions, innuendo, suspicion,

---

[9]Peterson cites to the Tenth Circuit's Order and Judgment in *Vera v. Utah Department of Human Services*, 60 Fed. Appx. 228 (10th Cir., decided March 11, 2003) (No. 02-4112), as evidence of this purported "departure." In *Vera*, the court of appeals observed that "the district court appears to have taken great care in evaluating the merits of the claims and took special efforts to ensure that Mr. Vera was represented by counsel in filing his renewed request for appointment of counsel" and concluded that:

> [f]ollowing a thorough review of the record, the briefs, and the district court's orders, we conclude that for reasons substantially the same as those reached by the district court in its Orders dated December 14, 2001, and May 31, 2002, the district court did not err in denying Appellant's requests for the appointment of counsel and the recusal of Judge Jenkins, and in granting summary judgment in favor of Appellees.

60 Fed. Appx. at 230, 232. How the court of appeals' order affirming this court's orders in *Vera* serves to support any of Peterson's allegations concerning this court's purported "departure from competent judicature" remains a mystery.

opinion, and similar non-factual matters," Peterson's handful of "factual" assertions purportedly evidencing "delusional thinking," "paranoia" or other mental disability do not suffice to show that """a reasonable person, *knowing all the relevant facts*, would harbor doubts about the judge's impartiality.""" *Nichols*, 71 F.3d at 351 (emphasis added) (quoting *Cooley,* 1 F.3d at 993 (quoting *Burger*, 964 F.2d at1070 (further quotation omitted))).

Labels are labels, but they are not facts and cannot do the work of facts.

As to the relevant facts, the transcript of the February 23rd hearing and the record in this case speak for themselves.

For purposes of disqualification pursuant to § 144, "[t]he affidavit is insufficient if it merely states conclusions, rumors, beliefs and opinions," *Glass*, 849 F.2d at 1267, and much of Peterson's Affidavit cannot suffice to sustain his motion under § 144 for that reason. Even if the very few factual allegations of Peterson's Affidavit are taken as true for purposes of § 144, they must still be "strictly construed against the affiant," and "there is a substantial burden on the moving party to demonstrate that the judge is not impartial," *Burger*, 964 F.2d at 1070. In this case, Peterson's allegations fail to carry that burden.

For purposes of § 144, the bias charged must be of a *personal* nature; yet Peterson's allegations concerning the court's mental disability are global in their scope, averring "delusional thinking" on the part of this court that embraces *all* litigants coming before the court.

As Judge Kozinski observed in *United States v. State of Washington*, 98 F.3d 1159 (9th Cir. 1996), *cert. denied*, 522 U.S. 806 (1997):

> Disability, mental or physical, is not one of the grounds enumerated in sections 144, 455 or any other statute; it is, therefore, not a proper basis for seeking a judge's recusal. The only recourse when a judge is believed to be

> disabled is to complain to the circuit judicial council. *See* 28 U.S.C. §§ 372(c). If the council, after investigation, finds the judge unfit to serve, it may request that he voluntarily retire, order that no further cases be assigned to him temporarily or take "such other action as it considers appropriate." 28 U.S.C. § 372(c)(6)(B). Unlike a motion to recuse under sections 144 or 455, which is raised in the particular case where the conflict arises, a section 372(c) complaint is handled as a separate, quasi-adjudicative proceeding.

98 F.3d at 1164-65 (Kozinski, J., concurring) (footnotes omitted).[10]

Peterson's Affidavit thus proves to be wholly insufficient to support disqualification on the grounds of this court's purported "personal bias or prejudice either against him or in favor of any adverse party" within the meaning of 28 U.S.C. § 144[11] or a "personal bias or prejudice concerning a party" within the meaning of 28 U.S.C. § 455(b)(1).[12]

Nor has Peterson satisfied the requirements of § 455(a) by showing that "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality" under all of the circumstances of this case.

For the foregoing reasons, therefore,

---

[10]As Judge Kozinski noted,

> Section 372 seems to authorize only prospective relief. The judicial councils, insofar as I am aware, may not take action in a pending case. Indeed, our judicial council has stated repeatedly that it may not address any matter that concerns the merits of a case and might be raised through normal channels of appellate review. *See In re Charge of Judicial Misconduct,* 691 F.2d 924, 925 (9th Cir. Jud. Coun. 1982) ("The complaint procedures of [section 372] provide administrative remedies only in the absence of an appropriate judicial remedy."); *In re Charge of Judicial Misconduct,* 685 F.2d 1226, 1227 (9th Cir. Jud. Coun. 1982) (section 372 relief not available when matter is "reviewable under any other provision of law on the record" (quoting S. Rep. No. 362, 96th Cong., 2d Sess. 3 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4315, 4317)).

98 F.3d at 1165 n.1.

[11]"[S]ection 144 requires the more difficult showing of 'actual' bias[.]" Federal Judicial Center, *Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144*, at 48.

[12]Peterson's Affidavit proffers no "evidence of personal animosity or malice, which is necessary to succeed on a Section 455(b)(1) motion." *Brokaw*, 235 F.3d at 1025; *see Hook,* 89 F.3d at 355 ("bias or prejudice from which the law of recusal protects a party must be grounded in some personal animus or malice that the judge harbors against him, . . . .").

**IT IS ORDERED** that Peterson's "Motion to Recuse Judge Bruce S. Jenkins" (dkt. no. 29), is DENIED.

DATED this ___ day of May, 2006.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge